**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BALKAN ENERGY LIMITED and
BALKAN ENERGY (GHANA) LIMITED,

Petitioners,

v.

THE REPUBLIC OF GHANA,

Respondent.

No. ______________

**PETITION TO CONFIRM ARBITRAL AWARD**

Petitioners Balkan Energy Limited and Balkan Energy (Ghana) Limited, by and through their attorneys MoloLamken LLP, respectfully submit this petition to confirm, recognize, and enforce a foreign arbitral award against respondent Republic of Ghana.

**NATURE OF THE PROCEEDING**

1. This is an enforcement proceeding under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention"). Petitioners Balkan Energy Limited and its predecessor-in-interest, Balkan Energy (Ghana) Limited, seek to confirm an arbitral award rendered against respondent Republic of Ghana. The Award was rendered by a tribunal of the Permanent Court of Arbitration at The Hague, Netherlands, in *Balkan Energy (Ghana) Limited v. Republic of Ghana*, PCA Case No. 2010-7.

2. The arbitral tribunal issued its Award on the Merits on April 1, 2014. A duly certified copy of that Award is attached as Exhibit A to the accompanying Declaration of Robert

K. Kry. The Award ordered the Republic to pay $11.75 million plus costs and interest to Balkan Energy (Ghana) Limited. As of this filing, the amount due exceeds $13.3 million.

3. In addition, the tribunal issued an Interim Award dated December 22, 2010, in which it sustained its jurisdiction over this dispute. A duly certified copy of the Interim Award is attached as Exhibit B to the Kry Declaration.

4. The arbitration arose out of a Power Purchase Agreement between Balkan Energy (Ghana) Limited and the Republic of Ghana, dated July 27, 2007. A duly certified copy of the Power Purchase Agreement is attached as Exhibit C to the Kry Declaration. Article 22.2 of that contract contains an arbitration agreement by which the Republic of Ghana agreed to submit this dispute to the Permanent Court of Arbitration.

5. The Republic has refused to pay any of the amounts it owes under the Award. Balkan Energy Limited and Balkan Energy (Ghana) Limited therefore bring this action to enforce the Award pursuant to the New York Convention and the Federal Arbitration Act.

## PARTIES

6. Petitioner Balkan Energy Limited is a corporation incorporated and registered in England and Wales, whose registered office is at 3rd Floor, Chancery House, St. Nicholas Way, Sutton, Surrey, SM1 1JE, United Kingdom.

7. Petitioner Balkan Energy (Ghana) Limited is a corporation incorporated and registered in Ghana, whose registered office is at Fidelity House, 20 Ring Road Central, Accra, Ghana.

8. Respondent Republic of Ghana is a foreign sovereign.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this petition to confirm a foreign arbitral award against a foreign sovereign pursuant to 28 U.S.C. § 1330(a), 28 U.S.C. § 1331, and 9 U.S.C. § 203.

10. The Republic of Ghana is not entitled to sovereign immunity in this matter because it expressly waived its immunity in the Power Purchase Agreement. Article 24 of that Agreement provides:

> To the extent that GoG [the Government of Ghana] may in any jurisdiction claim for itself or its assets or revenues immunity from suit, execution, attachment (whether in aid of execution, before judgment or otherwise) or other legal process and to the extent that in any such jurisdiction there may be attributed to GoG or its assets or revenues such immunity (whether or not claimed) GoG agrees not to claim and irrevocably waives such immunity to the full extent permitted by the laws of such jurisdiction.

Kry Decl. Ex. C art. 24. Accordingly, this matter falls within the waiver exception to immunity set forth in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(1).

11. The Republic also is not entitled to sovereign immunity because this is an action to confirm an arbitral award governed by the New York Convention, a treaty providing for the recognition and enforcement of arbitral awards to which the United States is a party. Accordingly, this matter falls within the Foreign Sovereign Immunities Act's exception for arbitral enforcement, 28 U.S.C. § 1605(a)(6).

12. This Court has personal jurisdiction over the Republic of Ghana pursuant to 28 U.S.C. § 1330(b) because the Republic is a foreign sovereign; it is not entitled to immunity for the reasons above; and it will be duly served as set forth in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608(a).

13. Venue is proper in this district under 28 U.S.C. § 1391(f)(4) and 9 U.S.C. § 204.

## STATEMENT OF FACTS

### *The Power Purchase Agreement*

14. This dispute arises out of a Power Purchase Agreement ("PPA") entered into on July 27, 2007, between Balkan Energy (Ghana) Limited ("Balkan Ghana") and the Republic of Ghana. Kry Decl. Ex. C.

15. Balkan Energy LLC is an energy company based in Texas. Kry Decl. Ex. A ¶1; Kry Decl. Ex. B ¶1. Petitioner Balkan Energy Limited is Balkan Energy LLC's wholly owned subsidiary in the United Kingdom, and petitioner Balkan Ghana is Balkan Energy Limited's wholly owned subsidiary in Ghana. Kry Decl. Ex. A ¶1.

16. In 2007, Ghana faced a serious power shortage. Kry Decl. Ex. A ¶89. To address that shortage, the Republic negotiated with Balkan Energy for the refurbishment and commissioning of an unused power barge. *Id.*

17. As required by Ghana law, Balkan Energy formed a local subsidiary to carry out the project. Kry Decl. Ex. A ¶105. Balkan Energy (Ghana) Limited was registered in Ghana as a locally incorporated company on July 16, 2007. *Id.*

18. On July 27, 2007, Balkan Ghana and the Republic of Ghana entered into the Power Purchase Agreement. Kry Decl. Ex. C. Under the PPA, Balkan Ghana was responsible for refurbishing, equipping, commissioning, testing, and operating the barge. *Id.* arts. 2.1-2.4. The Republic's responsibilities included providing electricity onsite; connecting the site to the national electrical grid through transmission lines; facilitating the importation of equipment and the acquisition of permits, approvals, and visas; and taking and paying for all electricity generated by the barge during the contract term. *Id.* arts. 2.5-2.10.

19. Article 181(5) of the Constitution of Ghana requires parliamentary approval for an "international business or economic transaction to which the Government is a party." Kry

Decl. Ex. B ¶65 & n.82. In entering into the PPA, Balkan Ghana insisted on express assurances that the Republic would obtain all necessary approvals – and in particular, assurances that the parliamentary approval requirement of Article 181(5) would not apply.

20. Article 29.2 of the PPA thus expressly represented and warranted that "[t]he GoG has taken all actions necessary . . . to authorize it to execute . . . the terms and conditions of this Agreement" and that "[t]he GoG has the full legal right, power, and authority for and on behalf of the Government of Ghana to pledge the full faith and credit of the Republic of Ghana under the terms of this Agreement." Kry Decl. Ex. C art. 29.2(a).

21. In addition, Article 7.2 of the PPA required, as a condition precedent, that the Republic furnish a legal opinion concerning its authority to enter into the agreement. That provision called for both "a letter from the Government of Ghana that all the required approvals from the relevant authorities in Ghana have been obtained" as well as "[a] legal opinion of the Attorney General of the Republic of Ghana as to the validity, enforceability and binding effect of this Agreement." Kry Decl. Ex. C art. 7.2.

22. Consistent with that requirement, Ghana's Attorney General issued two legal opinions on October 26, 2007. The first opinion expressly addressed Article 181(5)'s parliamentary approval requirement and represented that it did not apply because Balkan Ghana was a local rather than foreign entity (even if ultimately owned by a foreign parent):

> [T]he power producer, Balkan Energy (Ghana) Limited (BEC) is a locally incorporated company and as a result the PPA does not come under the ambit of article 181(5) of the 1992 Constitution which stipulates that all international business or economic transaction[s] to which the Government is a party should be submitted to Parliament for approval. In the Supreme Court case of Attorney General versus Faroe Atlantic Co. Ltd. (2005-2006) SCGLR 271, annex 1, the Supreme Court held that international business or economic transaction means international business or international economic transaction. This clearly excludes the project hereof which involves a local company in a local transaction with the Government.

> ***In the light of the above a Parliamentary approval would not be required for the effectiveness of the Agreement[].***

Kry Decl. Ex. D at 1 (emphasis added). The second opinion represented more generally that "GoG has the power to enter into the Project Agreements and to exercise its rights and perform its obligations thereunder, and execution of the Project Agreements on behalf of GoG by the person(s) who executed the Project Agreements was duly authorised." Kry Decl. Ex. E at 1.

23. Article 22.2 of the PPA sets forth an arbitration agreement by which the parties agreed to submit any disputes to arbitration before the Permanent Court of Arbitration in The Hague, Netherlands:

> If any dispute arises out of or in relation to this Agreement and if such matter cannot be settled through direct discussions of the Parties, the matter shall be referred to binding arbitration at the Permanent Court of Arbitration, Peace Palace, Carnegieplein 2, 2517 KJ in The Hague, The Netherlands. . . . Applications may be made to such court for judicial recognition of the award and/or an order of enforcement as the case may be. Arbitration shall be governed by and conducted in accordance with UNCITRAL rules.

Kry Decl. Ex. C art. 22.2.

24. Article 23 of the PPA provides that "[t]his Agreement shall be governed by and construed in accordance with the laws of the Republic of Ghana." Kry Decl. Ex. C art. 23. The contract contains no provision specifically addressing what law governs the arbitration agreement in Article 22.2.

***The Arbitration and Awards***

25. As the arbitral tribunal found, the Republic of Ghana repeatedly failed to fulfill its obligations under the PPA. The electricity the Republic agreed to provide was intermittent and sometimes unavailable for days, necessitating the purchase of generators. Kry Decl. Ex. A ¶¶280, 439. Those problems had a negative effect on the commissioning process and increased the costs of the project. *Id.* ¶281.

26. The Republic also failed to connect the barge to the electrical grid as promised. Kry Decl. Ex. A ¶¶285-287. Transmission lines connecting the barge to control substations in nearby villages were not fully operational, and even when they were running, they had faults that required various modifications. *Id.* ¶¶125, 286, 451. Those issues resulted in still more expenditures and delays. *Id.* ¶452.

27. Despite those obstacles, Balkan Ghana persisted in its efforts to refurbish and operate the barge. As found by the tribunal, the company spent at least $12 million on the project. Kry Decl. Ex. A ¶¶614-625.

28. At no time over the many months Balkan Ghana was performing that work did the Republic ever suggest that the PPA was invalid or unenforceable because it had not obtained parliamentary approval for the agreement. Kry Decl. Ex. A ¶¶381, 395.

29. Despite failing to comply with its own obligations, the Republic sent a notice to Balkan Ghana on September 1, 2009, accusing Balkan Ghana of breaching the PPA. Kry Decl. Ex. F. The Republic's letter expressly "invoke[d] clause 22.2 of the PPA," quoted the language stating that any disputes "'shall be referred to binding arbitration,'" and "recommend[ed] that the issue be referred to the Permanent Court of Arbitration for resolution." *Id.* at 1-2.

30. Nonetheless, the Republic did not ultimately institute arbitral proceedings. Instead, Balkan Ghana filed a notice of arbitration on December 23, 2009. Kry Decl. Ex. B ¶10. As provided by the PPA's arbitration agreement, an arbitral tribunal was constituted by the Permanent Court of Arbitration in The Hague, Netherlands; and the parties, represented by counsel, proceeded to arbitration. *Id.* ¶¶10-14.

31. Despite its repeated assurances about the validity of the PPA, on June 25, 2010, the Republic of Ghana obtained an *ex parte* injunction from the Ghana High Court purporting to

restrain the arbitration pending a determination of whether the PPA was, in fact, subject to parliamentary approval under Article 181(5) of the Ghana Constitution. Kry Decl. Ex. B ¶45.

32. On December 22, 2010, after receiving briefs and oral argument, the arbitral tribunal issued its Interim Award addressing its jurisdiction to hear the dispute. Kry Decl. Ex. B. The Republic's sole ground for contesting jurisdiction was the one it had raised in the Ghana courts – namely, that the PPA was subject to parliamentary approval. *Id.* ¶¶61-195.

33. The tribunal rejected that argument. It confirmed that it had authority to determine its own jurisdiction. Kry Decl. Ex. B ¶¶98-115. It concluded that the arbitration agreement in the PPA was valid and enforceable. *Id.* ¶¶138-167. And it held that the injunction the Republic had procured from its own courts did not alter those conclusions. *Id.* ¶¶183-192.

34. In so deciding, the tribunal invoked the "bedrock principle[ ]" of arbitration law that an agreement to arbitrate is separable from the larger contract in which it appears. Kry Decl. Ex. B ¶¶99, 106-108. As a result, even though the PPA as a whole was governed by Ghana law, the arbitration agreement was governed by the law of the Netherlands – the country the PPA designated as the place of arbitration. *Id.* ¶152. Applying Dutch law, the tribunal found no basis for refusing to enforce the arbitration agreement – indeed, the Republic had not even made any argument for invalidity under Dutch law. *Id.* ¶154.

35. On May 16, 2012, the Ghana Supreme Court issued a decision in the related judicial proceedings. Kry Decl. Ex. G. It held that, contrary to the Attorney General's representations, the PPA was in fact an "international business transaction" subject to parliamentary approval. *Id.* at 40-41. Nonetheless, the court reached the opposite conclusion for the PPA's arbitration agreement: "[T]he arbitration provision[ ] contained in clause 22.2 of the

Power Purchase Agreement . . . ***does not constitute an international business transaction within the meaning of Article 181(5) of the Constitution***." *Id.* at 41 (emphasis added).

36. The arbitral tribunal then received extensive briefing on the merits of the dispute and held a hearing from April 24 to May 3, 2013. Kry Decl. Ex. A ¶¶17-18, 27, 41-42, 59, 66-79. On April 1, 2014, the tribunal issued a nearly 200-page Award on the Merits in favor of Balkan Ghana. Kry Decl. Ex. A.

37. The tribunal addressed at length the Ghana Supreme Court's decision regarding the enforceability of the PPA under Article 181(5) of the Ghana Constitution. Kry Decl. Ex. A ¶¶326-397. The tribunal noted the court's conclusion that the PPA was subject to parliamentary approval. *Id.* ¶331. It also quoted the court's holding that the arbitration agreement itself was not subject to parliamentary approval (although the court had expressed difficulty conceiving of an arbitration agreement as a transaction separate and independent from the underlying transaction). *Id.* ¶332.

38. Ultimately, the tribunal held that Balkan Ghana was entitled to pursue compensation even in light of the Ghana Supreme Court's decision. As the tribunal noted, the Republic had acknowledged the validity of the PPA over several years. Kry Decl. Ex. A ¶391. Its Attorney General had issued opinions confirming the PPA's validity. *Id.* ¶392. And under the terms of the PPA, it was the ***Republic's*** obligation to obtain necessary approvals. *Id.* ¶393. "If Parliamentary approval was not sought because rightly or wrongly it was believed unnecessary, the Respondent's failure to seek Parliamentary approval of the PPA cannot be held today against the Claimant." *Id.* The tribunal deemed the question "governed not only by principles of estoppel but by fundamental considerations of good faith." *Id.*

39. The tribunal concluded that "the Claimant had [a] reasonable expectation that the Respondent had accepted the validity of the Agreement and was, therefore, entitled to rely on the PPA and to expect that the Respondent would fulfill the obligations that it had assumed." Kry Decl. Ex. A ¶397. "[T]he principle that a reasonable and legitimate expectation[] of a party can give rise to a benefit that cannot be denied to that party is a well-acknowledged principle of the common law and is, as such, part of the laws of the Republic of Ghana." *Id.*

40. On the merits, the tribunal found that the Republic failed to comply with its obligations under the PPA, including its obligations to supply electricity and to provide a connection to the national grid. Kry Decl. Ex. A ¶¶437-442, 448-452. The Republic had also improperly arrested one of Balkan Energy's managers. *Id.* ¶¶549-553.

41. The tribunal awarded Balkan Ghana $12 million as restitution for the expenses it had incurred refurbishing the barge. Kry Decl. Ex. A ¶¶614-625. It awarded another $50,000 for the unlawful arrest. *Id.* ¶635. It deducted $300,000 for a counterclaim by the Republic. *Id.* ¶636. Finally, it awarded interest on the bulk of the Award, *id.* ¶¶637-639, and ordered the Republic to reimburse Balkan Ghana for $30,000 in costs, *id.* ¶¶640-641.

42. In total, therefore, the tribunal ordered the Republic of Ghana to pay Balkan Ghana $11.75 million plus interest and costs. Kry Decl. Ex. A ¶642.

43. During the course of the arbitration, on January 1, 2010, Balkan Ghana and Balkan Energy Limited agreed to an interest in claim assignment by which Balkan Energy Limited acquired the right to 95% of the recovery in the arbitration in return for an agreement to pay the costs and expenses of the arbitration. Kry Decl. Ex. H.

44. Following the Award, on August 22, 2016, Balkan Ghana and Balkan Energy Limited agreed to a deed of assignment by which Balkan Ghana assigned all of its rights and interests in the Award to Balkan Energy Limited. Kry Decl. Ex. I.

45. The Republic has failed to pay any of the amounts due under the Award. As of this filing, the amount owing, including interest and costs, is approximately $13,348,720. Kry Decl. Ex. J.

**GROUNDS FOR ENFORCING THE AWARD**

46. The New York Convention is an international treaty signed by over 150 countries that is designed to facilitate and expedite the recognition and enforcement of foreign arbitral awards. *See* Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517. To that end, the Convention requires that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the following articles." *Id.* art. III, 21 U.S.T. at 2519. Both the United States and the Republic of Ghana are parties to the New York Convention and are bound by its terms. *See New York Arbitration Convention, Contracting States*, http://www.newyorkconvention.org/countries. The Netherlands, the seat of the arbitration, is also a party. *Id.*

47. The New York Convention's goal is "to encourage the recognition and enforcement of commercial arbitration agreements." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). That objective is consistent with the "emphatic federal policy in favor of arbitral dispute resolution" – a policy that "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). In light of that strong pro-arbitration policy, confirmation proceedings are meant to be "summary in nature." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp.

2d 12, 20 (D.D.C. 2011). "'[T]he showing required to avoid summary confirmation is high'" and "rests with the party resisting confirmation." *Id.*

48. In the United States, the New York Convention is implemented by Chapter 2 of the Federal Arbitration Act. That statute expressly provides that "[t]he Convention . . . shall be enforced in United States courts in accordance with this chapter." 9 U.S.C. § 201. It specifies:

> Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The ***court shall confirm the award*** unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

9 U.S.C. § 207 (emphasis added). Confirmation is thus ***mandatory*** unless one of the Convention's narrow grounds for non-enforcement applies.

49. The Award in this case falls within the scope of the Convention. Under the Federal Arbitration Act, "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention" unless it arises out of a "relationship which is entirely between citizens of the United States." 9 U.S.C. § 202. Those requirements are met. The Award arises out of a commercial contract for the refurbishment of a power barge, and no party is a citizen of the United States.

50. Article IV of the Convention requires a party seeking recognition and enforcement of an award to submit "[t]he duly authenticated original award or a duly certified copy thereof" as well as "[t]he original [arbitration] agreement . . . or a duly certified copy thereof." New York Convention art. IV.1, 21 U.S.T. at 2519-20. Petitioners have submitted those materials. Kry Decl. Exs. A, C.

51. Balkan Energy Limited has standing to seek enforcement and recognition of the Award as the assignee of Balkan Ghana. *See* Kry Decl. Ex. I; *e.g.*, *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 101, 105 (D.C. Cir. 2015) (ordering enforcement in favor of assignee); *Glob. Distressed Alpha Fund I LP v. Red Sea Flour Mills Co.*, 725 F. Supp. 2d 198, 201-03 (D.D.C. 2010) (similar); *Fitzpatrick Int'l Ltd. v. Republic of Equatorial Guinea*, No. H-12-1300, 2013 WL 5964560, at *8 n.69 (S.D. Tex. Nov. 7, 2013) (similar). Alternatively, if Balkan Energy Limited is not the proper petitioner, Balkan Ghana has standing to seek enforcement of the Award in its own name.

52. Finally, no ground for denial of recognition exists. "[T]he Convention is 'clear' that a court 'may refuse to enforce the award only on the grounds explicitly set forth in Article V of the Convention.'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012). None of the grounds set forth in that article applies to this case. *See* New York Convention art. V, 21 U.S.T. at 2520.

53. The sole basis on which the Republic challenged the arbitral tribunal's jurisdiction was that the PPA, including the arbitration agreement, was subject to parliamentary approval that was never obtained. Kry Decl. Ex. B. Under Article V.1(a) of the Convention, recognition and enforcement may be refused where "[t]he parties to the agreement . . . were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made." New York Convention art. V.1(a), 21 U.S.T. at 2520. For multiple reasons, that exception does not apply here.

54. First, as the tribunal recognized, it is a "bedrock principle[ ]" of arbitration law that an agreement to arbitrate is separable from the larger contract in which it appears. Kry Decl.

Ex. B ¶¶99, 106-108. United States courts have repeatedly applied that principle in arbitration enforcement proceedings. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006) (holding that "an arbitration provision is severable from the remainder of the contract"); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 794 F.3d 99, 102 (D.C. Cir. 2015) (explaining that "the agreement to arbitrate is 'separate from the obligations the parties owe to each other under the remainder of the contract' "). That separability rule is a fundamental tenet of United States arbitration enforcement law and thus applies whether or not a state or foreign country would deem the provision severable. *See, e.g.*, *Belize Bank Ltd. v. Gov't of Belize*, 191 F. Supp. 3d 26, 32, 39 (D.D.C. 2016) (deeming foreign decisions on authority to enter into underlying agreements "of no consequence" and rejecting argument that arbitration agreement was invalid under the laws of Belize, where the argument did not relate specifically to the arbitration clause), *appeal docketed*, No. 16-7089 (D.C. Cir. July 18, 2016).

55. Applying that separability principle to the PPA, the arbitral tribunal properly concluded that the arbitration agreement was governed by the law of the Netherlands – the jurisdiction the PPA designated as the place of arbitration – rather than the laws of Ghana that govern the rest of the contract. *See* Kry Decl. Ex. B ¶152; Albert Jan van den Berg, *The New York Arbitration Convention of 1958: Towards a Uniform Judicial Interpretation* 293 (1981) ("[I]f a contract contains a general choice of law clause and provides in the arbitral clause that arbitration is to be held in a country with a different law, the latter indication must be deemed to prevail over the former."); 3 Gary B. Born, *International Commercial Arbitration* §25.04[A], at 3203 (2d ed. 2014) ("Th[e] default rule is very clearly the law of the arbitral seat, not the law governing the parties' underlying contract."); *cf. Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 291 (5th Cir. 2004) ("Under the

New York Convention, an agreement specifying the place of the arbitration creates a presumption that the procedural law of that place applies to the arbitration.”). The tribunal correctly found no basis under Dutch law for refusing to enforce the arbitration agreement. Kry Decl. Ex. B ¶154.

56. Ultimately, the choice of law issue was beside the point. The Ghana Supreme Court determined that the arbitration agreement was not subject to parliamentary approval ***even under Ghana law***: “[T]he arbitration provision[ ] contained in clause 22.2 of the Power Purchase Agreement . . . ***does not constitute an international business transaction within the meaning of Article 181(5) of the Constitution***.” Kry Decl. Ex. G at 41 (emphasis added). As a result, the arbitration agreement would not be subject to parliamentary approval even if Ghana law applied.

57. Finally, by agreeing to arbitrate under UNCITRAL rules, the Republic expressly agreed to have arbitrability disputes decided by the arbitrators. *See Chevron Corp. v. Ecuador*, 795 F.3d 200, 207-08 (D.C. Cir. 2015). There is no basis for disturbing the arbitral tribunal’s jurisdictional determinations here.

58. Courts in this Circuit have enforced foreign arbitral awards despite similar arguments. In *Belize Social Development Ltd. v. Government of Belize*, 794 F.3d 99 (D.C. Cir. 2015), for example, the D.C. Circuit enforced an award against the Government of Belize despite an argument that “the Prime Minister at the time of the entry of the agreement lacked [constitutional] authority to enter either the underlying contract or the arbitration agreement.” *Id.* at 100. The court explained that “the agreement to arbitrate is ‘separate from the obligations the parties owe to each other under the remainder of the contract,’ ” so the Government had to “show that the Prime Minister lacked authority to enter into the arbitration agreement,” not just the rest of the contract. *Id.* at 102. The Government could not make that showing. *Id.* at 103; *see also*

*Belize Bank Ltd. v. Government of Belize*, 191 F. Supp. 3d 26, 32 (D.D.C. 2016) (reaching same result despite "purported binding effect of foreign court decisions that address the former Prime Minister's authority to enter into the underlying agreements").

59. This case is no different. Whether or not the PPA as a whole was subject to parliamentary approval, it is now clear that the ***arbitration agreement itself*** was not – under either Dutch or Ghana law. Consequently, the arbitrators had jurisdiction over the dispute, and the New York Convention requires this Court to enforce the Award.

60. WHEREFORE, petitioners respectfully request an order:

a. granting this petition;

b. recognizing, confirming, and enforcing the Award in its entirety;

c. directing that judgment be entered thereon in the amount of $11.75 million plus costs and interest as provided by the Award, plus any attorney's fees, costs, and interest that may be recoverable in this proceeding; and

d. granting such other and further relief that the Court deems just and proper.

Dated: March 31, 2017
Washington, D.C.

Respectfully submitted,

/s/ Robert K. Kry

Robert K. Kry
D.C. Bar # 490545
MOLO LAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Tel.: (202) 556-2011
Fax: (202) 556-2001
rkry@mololamken.com

*Attorney for Petitioners*