**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BALKAN ENERGY LIMITED and** ) | |
| **BALKAN ENERGY (GHANA) LIMITED,** ) | |
| ) | |
| **Petitioners,** ) | |
| ) | Case No. 1:17-cv-00584-APM |
| **v.** ) | |
| ) | |
| **THE REPUBLIC OF GHANA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF**
**RESPONDENT'S MOTION TO DISMISS**

Respondent Republic of Ghana ("Ghana") moves to dismiss the instant petition to

confirm a foreign arbitral award by Petitioners Balkan Energy Limited ("Balkan UK") and

Balkan Energy (Ghana) Limited ("Balkan Ghana").

The petition must be dismissed because Ghana has foreign sovereign immunity under the

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* ("FSIA"). Where a foreign state

has sovereign immunity, the federal court lacks subject matter jurisdiction and cannot address the

merits. Petitioners incorrectly invoke the FSIA's arbitration (§ 1605(a)(6)) and waiver

(§ 1605(a)(1)) exceptions to foreign sovereign immunity because they do not apply.

*Balkan Ghana* obtained the subject arbitral award against Ghana. In the petition and its

exhibits, Balkan Ghana has judicially admitted that it assigned the award to Balkan UK. The

assignment attached to the petition unequivocally states that Balkan Ghana has "absolutely"

assigned the award to Balkan UK, including the right to "enforce" the award. However, it is

settled law that an assignor lacks standing to enforce that which he has assigned. Thus, the

arbitration and waiver exceptions cannot apply to Balkan Ghana's claims, because Balkan Ghana

has judicially admitted that it has no rights in the arbitral award.

For its part, Balkan UK is not a party to the arbitral award, and asserts its rights to enforce it based solely on the purported assignment.  Thus, this Court cannot confirm the award in favor of Balkan UK unless the assignment is valid.  The validity of the assignment is in question because the Power Purchase Agreement prohibited assignments of "rights or benefits thereunder" without Ghana's written consent, and there was no such consent.  However, this Court lacks jurisdiction to adjudicate the validity of the assignment because the asserted FSIA exceptions do not apply to such a claim.  The arbitration exception does not apply to a dispute over the validity of an assignment.  Similarly, the waiver of immunity clause in the Power Purchase Agreement between Ghana and Balkan Ghana also cannot apply to the claims of purported assignee Balkan UK, because the Power Purchase Agreement prohibited assignments of "rights or benefits thereunder" without Ghana's consent and Ghana did not consent. Therefore, the Court lacks subject matter jurisdiction to adjudicate the validity of the assignment, without which Balkan UK cannot confirm the award.

The Court should also dismiss the petition on *forum non conveniens* grounds, because Ghana is an adequate alternative forum and the private and public factors favor the Ghanaian judicial forum.  Ghana acknowledges that the D.C. Circuit has held that this doctrine does not apply if the alternative forum is located abroad.  However, Supreme Court authority has confirmed that the doctrine applies even where the alternative foreign forum is located abroad. Supreme Court authority controls over contrary circuit authority.  In the alternative, should this Court find that it is bound by D.C. Circuit authority, Ghana wishes to preserve this argument for appeal.

Finally, as discussed above, Balkan Ghana has judicially admitted that it has assigned all its rights in the arbitral award to Balkan UK, including the rights to enforce the award and to

payment of all proceeds under the award.  As such, the petition also must be dismissed on the merits as to Balkan Ghana for failure to state a claim.  Balkan Ghana cannot enforce the award.

## I.      BACKGROUND

Balkan Ghana is incorporated and has its registered offices located in Ghana.  Petition at ¶ 7.  The subject "arbitration arose out of a Power Purchase Agreement between Balkan Energy (Ghana) Limited and the Republic of Ghana, dated July 27, 2007."  *Id.* at ¶ 4 and Exhibit C (attaching said agreement) to the Robert K. Kry Declaration, and at ¶ 18 ("On July 27, 2007, Balkan Ghana and the Republic of Ghana entered into the Power Purchase Agreement.").  "Article 22.2 of that contract contains an arbitration agreement by which the Republic of Ghana agreed to submit this dispute to the Permanent Court of Arbitration" in the Netherlands.  *Id.*

The arbitral tribunal issued its Award on the Merits on April 1, 2014.  Petition at ¶ 2 and Exhibit A to the Kry Declaration.  The Award ordered the Republic to pay $11.75 million plus costs and interest *to Balkan Energy (Ghana) Limited*.  *Id.* at ¶¶ 2 and 42 ("In total, therefore, the tribunal ordered the Republic of Ghana to pay *Balkan Ghana* $11.75 million plus interest and costs.") (emphasis added).  Thus, it is clear that the Power Purchase Agreement, arbitration and award were between Ghana and Balkan Ghana, not Balkan UK.

Balkan UK is incorporated and has its registered offices located in the United Kingdom.  Petition at ¶ 7.  Balkan UK was not a party to the Power Purchase Agreement, the underlying arbitration or the arbitral award.  *Id.* at ¶¶ 2 and 4 and Exhibits A and C to the Kry Declaration.  Petitioners filed the instant petition on March 31, 2017.  Prior to that date, Balkan Ghana purportedly assigned the arbitral award to Balkan UK.  *Id.* at ¶ 44  ("[O]n August 22, 2016, Balkan Ghana and Balkan Energy Limited [Balkan UK] agreed to a deed of assignment by which Balkan Ghana assigned all of its rights and interests in the Award to Balkan Energy Limited [Balkan UK].");  see also Exhibits H (attaching the "Interest in Claim Assignment") and

I (attaching the "Deed of Assignment of Arbitration Awards and Rights under the Awards") to the Kry Declaration.

## II.    DISCUSSION

This action arises under Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.* ("FAA").The Federal Rules of Civil Procedure govern proceedings under the FAA.  *See* Fed. R. Civ. P. 81(a)(6)(B) ("These rules, to the extent applicable, govern proceedings under the following laws, except as these laws provide other procedures: (B) 9 U.S.C., relating to arbitration . . ..").  Pursuant to Fed. R. Civ. P. 12(b), Ghana moves to dismiss the petition.

### A.    The Petition Must Be Dismissed on Foreign Sovereign Immunity Grounds.

A "foreign state is presumptively immune from the jurisdiction of United States courts," and "unless a specified [FSIA] exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."  *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

#### 1.    The Court Lacks Subject Matter Jurisdiction Over Balkan Ghana's Claims.

This Court lacks jurisdiction over Balkan Ghana's claims, because Balkan Ghana has judicially admitted that it has assigned the arbitral award to Balkan UK prior to commencement of this confirmation action.  As such, the FSIA arbitration and waiver exceptions to foreign sovereign immunity do not apply to the claims asserted by Balkan Ghana.

An assignor lacks standing to enforce that which he has assigned.  "An *unequivocal and complete assignment extinguishes the assignor's rights* against the obligor and leaves the assignor without standing to sue the obligor."  *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112 (2d Cir. 1984) (emphasis added).  "Once a claim has been assigned . . . the assignee is the owner and the assignor generally lacks standing to sue on it." *Export Dev. Canada v. ESE Electronics Inc.*, 2017 WL 2713537 at *13 (C.D. Cal. June 20,

2017) (citing *Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1132 (C.D. Cal. 2015)).  A "contracting party that has assigned its contract rights to a third party does not have standing to enforce that contract."  *Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999).  Under the Federal Rules of Civil Procedure, the assignor therefore cannot assert a claim, because it is not the real party in interest. *MHI Shipbuilding, LLC v. Nat'l Fire Ins. Co. of Hartford*, 286 Bank. Rptr. 16, 27 (D. Mass. 2002) ("As a total assignor, MHI lacks standing to sue on the Surety Bond under state law and is not the real party in interest under the federal procedural rules").

The assignee of an arbitral award is the only real party in interest that can bring an action to confirm the award.  *See Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 37 (D.D.C. 2013); *Primax Recoveries, Inc. v. Lee*, 260 F. Supp. 2d 43, 51 (D.D.C. 2003) (holding that the court could afford complete relief in the absence of the assignor, because the plaintiff-assignee "is the sole possessor of the rights being asserted against the defendant.").

Here, Balkan Ghana has judicially admitted that it has absolutely and unequivocally assigned the arbitral award to Balkan UK.  Petition at ¶  44  ("[O]n August 22, 2016, Balkan Ghana and [Balkan UK] agreed to a deed of assignment by which Balkan Ghana assigned *all of its rights and interests* in the Award to [Balkan UK].") (emphasis added).  Section 1 of the "Deed of Assignment of Arbitration Awards and Rights under the Awards" executed by Balkan Ghana and Balkan UK states that: "[t]he Parties agree and acknowledge that with effect from the date hereof (the 'Effective Date') the Assignor [Balkan Ghana] *absolutely assigns* the Awards and the Rights under the Awards to the Assignee [Balkan UK]."  Kry Declaration at Exhibit I, Section 1 (emphasis added).  Section 2 states that "[t]he Parties agree that as from the Effective Date the Assignor [Balkan Ghana] no longer has any rights in relation to the Awards . . .."  *Id.*

(emphasis added).  Recital E likewise states that said assignment includes "the right to receive 100% of the proceeds from the Awards" and "*the right to enforce* the Awards."  *Id.*  (emphasis added).

Therefore, Balkan Ghana has judicially admitted that it has executed a written deed of assignment with Balkan UK specifically stating that it is an "absolute" assignment of the award and all "rights" in the award to Balkan UK, that Balkan UK shall receive 100% of the proceeds of the award, that Balkan Ghana has assigned "the right to enforce the award" to Balkan UK, and that Balkan Ghana "no longer has any rights in relation to the awards."  Balkan Ghana is bound by the contractual language, which leaves it with absolutely no rights in the award.  Since this assignment relinquishes all of Balkan Ghana's rights in the award, Balkan Ghana is not the real party in interest and cannot enforce the award.

Further, Section 6 of the "Deed of Assignment of Arbitration Awards and Rights under the Awards" states that it is governed by English law.  Even if English law were to apply, the result would be the same.  In *Belize Soc. Dev. Ltd.,* Judge Leon noted that under English law, "[w]hen there has been an assignment that takes effect in equity, the general rule is that it is the equitable assignee who has the right to sue, because it is the equitable assignee who is beneficially entitled to the thing in action." *Belize Soc. Dev. Ltd.,* 5 F. Supp. 3d at 38.  Judge Leon also noted that, where there is an equitable assignment, "[t]he assignor will not be allowed to maintain an action regarding the thing in action unless the assignee is joined as a party to the claim." *Id.*  The Supreme Court, too, has addressed the differences between legal and equitable assignments, and found both English and U.S. law to be similar. *Sprint Comm. Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 276-285 (2008).  In sum, a legal assignment confers a legal interest, and an equitable assignment confers only a beneficial interest. *Id.*  Thus, an assignor

can sue only where "the assignor retained legal title." *Id.* at 277. In *Belize Soc. Dev.,* Judge

Leon found an equitable assignment, because the assignment was not complete and absolute. *Id.*

at 31 ("Telemedia assigned to BSDL [only] *the monetary portion* of the Tribunal's Final

Award.") (emphasis added). In contrast, Balkan Ghana has not retained title to the arbitral

award, and has assigned the rights to confirm the award and to recover all proceeds of the award

to Balkan UK. Therefore, whether under U.S. or English law, Balkan Ghana cannot seek to

enforce the award.

Similarly, state courts also have recognized that "[c]ase law distinguishes between an

equitable and legal assignment. The difference between these two types of assignments is that a

legal assignment relates to a 'thing in being', whereas an equitable assignment relates to

contingent interests, expectancies, and things potential." *Johnson By and Through Lackey v.

Schick*, 882 P.2d 1059, 1061 (Okla. 1994). In order for a foreign arbitration award to be

confirmed under Article V(1)(e) of the New York Convention,[1] the award must be "binding."

Thus, for this reason, too, the purported assignment of the arbitral award was legal in nature,

which precludes Balkan Ghana from seeking to confirm the award.

Consequently, the FSIA's arbitration and waiver exceptions cannot apply to Balkan

Ghana's claims, because Balkan Ghana has judicially admitted that it has no rights in the award.

The arbitration exception (§ 1605(a)(6)) cannot apply, because there is no arbitral award subject

to said exception that can be enforced by Balkan Ghana. Nor can the FSIA waiver exception

(§ 1605(a)(1)) apply, because Balkan Ghana has admitted that it has assigned the right to enforce

the award to Balkan UK, and has relinquished all of its rights under the award. As discussed

below, the basis for the waiver argument is an immunity waiver clause found in the Power

---

[1]     New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3.

Purchase Agreement.  However, that clause does not help Balkan Ghana because it has retained

no rights in the arbitral award.  Accordingly, Ghana has sovereign immunity under the FSIA

with respect to the claims asserted by Balkan Ghana.  Balkan Ghana's claims must be dismissed

for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

### 2.    The Court Lacks Subject Matter Jurisdiction Over Balkan UK's Claims.

Balkan UK is not a party to the arbitral award, and asserts its rights to enforce the award

based solely on the assignment.  Thus, before this Court can address whether the award may be

confirmed in favor of Balkan UK, there must be a determination that the purported assignment is

valid.  Without a valid assignment, Balkan UK is not entitled to confirm the arbitral award.

However, Balkan UK cannot establish the validity of the assignment in this forum, because the

Court lacks subject matter jurisdiction to adjudicate an assignment claim by Balkan UK.  None

of the FSIA exceptions invoked by Balkan UK applies to adjudication of the validity of the

assignment.[2]

Here, the validity of the assignment of the arbitral award is at best doubtful.  The Power

Purchase Agreement expressly prohibited assignments without Ghana's written consent;

therefore, the resulting award could not be assigned without Ghana's written consent.  Article 19

of the Power Purchase Agreement states:  "Neither Party may assign nor transfer all or any part

of its *rights, benefits* or obligations *hereunder* without the written consent of the other Party."

Kry Declaration, Exhibit C, Article 19 (emphasis added).  The award is a "right or benefit" under

the Power Purchase Agreement.  However, Balkan UK has proffered no written consent from

---

[2]    The fact that Balkan Ghana has made judicial admissions that preclude it from enforcing the award does not relieve Balkan UK from its obligations to establish a valid assignment.  Thus, even if this Court dismissed Balkan Ghana's claims based on its judicially admitted assignment, Balkan UK (an entity separate from Balkan Ghana) would have to establish that this Court has jurisdiction to adjudicate Balkan UK's claim of an assignment.

Ghana to such assignment (because there was none).  In addition, as admitted by Balkan UK, "Article 181(5) of the Constitution of Ghana requires parliamentary approval for an 'international business or economic transaction to which the Government is a party.'"  Petition at ¶ 19.  Thus, to be effective, the purported assignment of the award would have required parliamentary approval under Article 181(5), because, unlike Balkan Ghana, Balkan UK is not a Ghanaian entity.  *Compare id.* at ¶ 22 (noting that Ghana provided an opinion that parliamentary approval was not required under the Power Purchase Agreement because Balkan Ghana was a locally incorporated entity) and ¶ 35 (noting that the Ghanaian Supreme Court then held instead that the Power Purchase Agreement required approval under Article 181(5)).  For this reason, the Power Purchase Agreement prohibited assignments without Ghana's written consent.  Thus, before this Court can confirm the award under the New York Convention in favor of Balkan UK, it must be established that the valid was valid.

This Court, however, lacks subject matter jurisdiction to adjudicate the validity of the assignment of the award because the asserted FSIA exceptions do not apply to such a claim.  The arbitration exception, on its face, does not apply to a dispute over the validity of an assignment.  The waiver exception is also inapplicable, because Balkan UK cannot invoke the waiver of immunity clause in the Power Purchase Agreement (even if the distinct purported assignment of the award were valid).  Article 24 of the Power Purchase Agreement contains a waiver of immunity clause.[3]  However, Article 19 prohibits any assignment of "rights or benefits" under

---

[3]     Article 24 of the Power Purchase Agreement provides: "To the extent that GoG [the Government of Ghana] may in any jurisdiction claim for itself or its assets or revenues immunity from suit, execution, attachment (whether in aid of execution, before judgment or otherwise) or other legal process and to the extent that in any such jurisdiction there may be attributed to GoG or its assets or revenues such immunity (whether or not claimed) GoG agrees not to claim and irrevocably waives such immunity to the full extent permitted by the laws of such jurisdiction." Kry Declaration, Exhibit C, Article 24.

the Power Purchase Agreement without the written consent of the opposing party, and Ghana did not consent to any assignment of the Power Purchase Agreement to Balkan UK.  In addition, the waiver clause in the Power Purchase Agreement cannot apply to the purported assignment of the award, because that assignment is a separate contract between Balkan Ghana and Balkan UK, whereas the Power Purchase Agreement is an integrated agreement[4] to which Balkan UK is not a party.  As a result, the waiver of immunity clause in the Power Purchase Agreement between Ghana and Balkan Ghana cannot apply to Balkan UK's claims.

Importantly, this is so even if the purported assignment of the award between Balkan Ghana and Balkan UK was somehow held to be valid, because the waiver clause is found only in the Power Purchase Agreement.

It appears that petitioners assigned purported the award to Balkan UK in order to avoid the limitations of Ghanaian law, such as Article 181(5) of the Constitution of Ghana, or otherwise to avoid payment being made to Balkan Ghana.  Yet, by doing so, Balkan Ghana has relinquished any rights to confirm the award, and the issue of the validity of the assignment creates a foreign sovereign immunity obstacle that Balkan UK cannot overcome, because none of the invoked FSIA exceptions applies to the issue of whether the assignment to Balkan UK was valid.

Accordingly, this Court lacks jurisdiction to adjudicate the validity of the assignment. Without such an adjudication, the award cannot be confirmed in favor of Balkan UK.

---

[4]       Article 27 of the Power Purchase Agreement provides, in relevant part:  "This agreement . . . contains all of the agreements and understandings of whatsoever kind and nature with respect to the subject matter of this agreement and the rights, interest, understandings, agreements and obligations of the parties relating thereto." Kry Declaration, Exhibit C, Article 27.

**B.     The Petition Must Be Dismissed Based on *Forum Non Conveniens* Grounds.**

A three-step test governs application of the doctrine of *forum non conveniens*:  "A court first determines whether there is an adequate alternative forum and, if so, then proceeds to balance both private interest factors and public interest factors in favor of the respective forums." *Jackson v. American Univ., Cairo,* 52 Fed. Appx. 518, 518 (D.C. Cir. 2002) (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 (1981)).

Article III of the New York Convention allows enforcement of foreign arbitral awards "in accordance with the rules of procedure of the territory where the award is relied upon."  The Supreme Court has held that *forum non conveniens* is a "procedural" doctrine.  *See American Dredging Co. v. Miller*, 510 U.S. 443, 453 (1994).

Nonetheless, the D.C. Circuit has held that *forum non conveniens* is not available in actions to confirm foreign arbitral awards under the New York Convention, because there can be no adequate alternative forum where such an action seeks to attach assets in the United States. *See TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 304 (D.C. Cir. 2005); *BCB Holdings Limited v. Gov't of Belize*, 650 Fed.Appx. 17 at *1 (D.C.Cir. 2016) ("the doctrine of *forum non conveniens* does not apply to actions in the United States to enforce arbitral awards against foreign nations") (relying on *TMR Energy*).[5]

However, the position of the D.C. Circuit is contrary to Supreme Court' unanimous pronouncement in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007),

---

[5]     In contrast, the Second Circuit's holds that "[w]here adequacy of an alternative forum is assessed in the context of a suit to obtain a judgment and ultimately execution on a defendant's assets, the adequacy of the alternative forum depends on whether there are some assets of the defendant in the alternative forum, not whether the precise asset located here can be executed upon there."  *Figueiredo Ferraz E. Engenharia de Projecto Ltda. v. Republic of Peru*, 665 F.3d 384, 391 (2d Cir. 2011); *accord, In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488 (2d Cir. 2002) (*forum non conveniens* applies to confirmation actions).

regarding what constitutes a "textbook case for immediate *forum non conveniens* dismissal." *Id.* at 435. *Sinochem* reaffirmed that the threshold requirement for *forum non conveniens* is "when an alternative forum has *jurisdiction* to hear the case." *Id.* at 429 (emphasis added) (alteration omitted). If *TMR Energy* were applied to the facts in *Sinochem*, it would foreclose *forum non conveniens*' dismissal because the *Sinochem* petitioner sought that "any assets of Sinochem be attached." *See* Amended Complaint, *Malaysia Int'l Shipping Corp. Berhad v. Sinochem Int'l Co. Ltd.*, Civ. Action No. 03-3771, 2003 WL 23904713 (E.D. Pa. 2003). Because the D.C. Circuit's position cannot be reconciled with *Sinochem*, it must yield to *Sinochem*.

Under *Sinochem*, the courts in Ghana are an adequate alternative judicial forum. As Ghana is a party to the New York Convention, http://www.newyorkconvention.org/countries, the petitioners may seek confirmation of the arbitral award in Ghana; the available remedy is the same. There also is no dispute that Ghana has sufficient assets in Ghana.

Further, the public and private factors weigh heavily in favor of *forum non conveniens* dismissal. The public factors weigh overwhelmingly in favor of the Ghanaian forum, because there is absolutely no nexus between the United States and this dispute. The Power Purchase Agreement, arbitration proceedings and resulting award are strictly between Ghana and a Ghanaian entity, Balkan Ghana. The courts in Ghana clearly have a greater interest in this dispute between Ghana and one of its nationals than do the courts in the United States. The role of the doctrine of *forum non conveniens* is pronounced in cases like this, where "none of the parties are American, and . . . there is absolutely no nexus between the subject matter of the litigation and the United States." *Piper Aircraft*, 454 U.S. at 252 n.17.

The private factors likewise weigh in favor of dismissal because the witnesses and evidence are in Ghana. As discussed above, there is also a dispute regarding the validity of the

purported assignment, based on the prohibition against assignments found in the Power Purchase Agreement, and based on whether Article 181(5) of the Constitution of Ghana would require parliamentary approval of the purported assignment. These issues of Ghanaian law are better suited for resolution by the Ghanaian courts. The Supreme Court has observed that deferring to another jurisdiction is appropriate where it is important to ascertain the meaning of another jurisdiction's statute "from the only tribunal empowered to speak definitively." *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28–29 (1959).

As such, dismissal on *forum non conveniens* grounds is required in favor of the Ghanaian judicial forum. Should this Court find that it is bound by circuit authority, Ghana respectfully preserves the foregoing *forum non conveniens* arguments for appeal.

### C. The Petition Must Be Dismissed as to Balkan Ghana for Failure to State a Claim.

As discussed above, Balkan Ghana has judicially admitted that it has assigned all its rights in the arbitral award to Balkan UK, including the rights to enforce the award and to payment of all proceeds under the award. As such, the petition also must be dismissed on the merits as to Balkan Ghana for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Balkan Ghana cannot seek confirmation in its favor of the arbitral award under the New York Convention, because Balkan Ghana has no interest in the award.

### D. Ghana Reserves its Rights to Oppose the Petition on the Merits.

As discussed above, petitions to confirm arbitral awards are subject to the Federal Rules of Civil Procedure. Nonetheless, some courts that have confirmed awards without following the Federal Rules of Civil Procedure. Therefore, out of an abundance of caution and in the event that the instant motion is finally resolved against Ghana, Ghana reserves its rights to answer the petition, conduct necessary discovery, and proceed onto the merits of the petition.

## III.     CONCLUSION

For the foregoing reasons, Ghana requests that the Court dismiss the petition.

Dated:  August 24, 2017                              Respectfully submitted,

                                                     /s/ Creighton R. Magid
                                                     Creighton R. Magid (D.C. Bar No. 476961)
                                                     DORSEY & WHITNEY LLP
                                                     1801 K Street, N.W., Suite 750
                                                     Washington, D.C.  20006
                                                     Telephone:  202-442-3555
                                                     Fax:  202-442-3199
                                                     Email:  magid.chip@dorsey.com


                                                     Juan C. Basombrio (D.C. Bar No. CA0001)
                                                     DORSEY & WHITNEY LLP
                                                     600 Anton Boulevard, Suite 2000
                                                     Costa Mesa, CA  92626
                                                     Telephone:  714-800-1405
                                                     Fax:  714-800-1499
                                                     Email:  basombrio.juan@dorsey.com

                                                     Counsel for Respondent
                                                     The Republic of Ghana


## CERTIFICATE OF SERVICE

I hereby certify that on this August 24, 2017, I electronically filed the foregoing

MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION TO DISMISS with the Clerk

of the Court for the United States District Court for the District of Columbia using the CM/ECF

system, which automatically served opposing counsel in this case.


                                                     /s/ Creighton R. Magid
                                                     Creighton R. Magid

14