## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BALKAN ENERGY LIMITED and** | ) |
| **BALKAN ENERGY (GHANA) LIMITED,** | ) |
| | ) |
| **Petitioners,** | ) |
| | ) |
| | ) Case No. 1:17-cv-00584-APM |
| **v.** | ) |
| | ) |
| **THE REPUBLIC OF GHANA,** | ) |
| | ) |
| **Respondent.** | ) |
| | ) |

## RESPONDENT'S PRELIMINARY RESPONSE TO PETITION

Creighton R. Magid (D.C. Bar No. 476961)
DORSEY & WHITNEY LLP
1801 K Street, N.W., Suite 750
Washington, D.C.  20006
Telephone:  202-442-3555
Fax:  202-442-3199
Email:  magid.chip@dorsey.com

Juan C. Basombrio (D.C. Bar No. CA0001)
DORSEY & WHITNEY LLP
600 Anton Boulevard, Suite 2000
Costa Mesa, CA  92626
Telephone:  714-800-1405
Fax:  714-800-1499
Email:  basombrio.juan@dorsey.com

*Counsel for Respondent*
*Republic of Ghana*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     DISCUSSION ....................................................................................................1

       A.     Ghana's Motion to Dismiss Must be Finally Adjudicated First, Followed by Limited Discovery and Supplemental Briefing on the Merits. ...........................1

       B.     The Subject Agreement (PPA) and its Arbitration Clause are Invalid. ...................1

       C.     Confirmation of the Petition Must Be Denied Pursuant to Article V(1)(a) of the New York Convention. ...................................................................5

       D.     Confirmation of the Petition Must Be Denied Pursuant to Article V(1)(c) of the New York Convention. ...................................................................7

       E.     Confirmation of the Petition Must Be Denied Pursuant to Article V(2)(b) of the New York Convention. ...................................................................8

       F.     Confirmation as to Balkan UK Must Be Denied Because the Assignment is Invalid..................................................................................9

       G.     Confirmation as to Balkan Ghana Must Be Denied based on its Judicial Admissions..........................................................................14

       H.     In the Alternative, Limited Discovery is Required to Determine the Validity and Effect of the Assignment, Followed by Supplemental Briefing. ..............................................................................14

III.    CONCLUSION................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allhusen v. Caristo Construction Corp.*,
  303 N.Y. 446 (N.Y. 1952) ...........................................................................................11

*ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*,
  961 F.Supp.2d 245 (D.D.C. 2013) ...............................................................................14

*Asia N. Am. Eastbound Rate Agreement v. BJI Indus., Inc.*,
  923 F.Supp. 4 (D.D.C.1996) .........................................................................................13

*Attorney General v. Balkan Energy Ghana Ltd., et al.*
  [2012] 2 SCGLR 998 ...............................................................................................2, 3, 9

*Attorney General v. Faroe Atl. Co. Ltd.*
  [2005-2006] SCGLR 271 at p. 304 .................................................................................3

*BCB Holdings Ltd. v. Gov't of Belize*,
  232 F.Supp.3d 28 (D.D.C. 2017) ...................................................................................6

*Belize Bank Ltd. v. Gov't of Belize*,
  191 F.Supp.3d 26 (D.D.C. 2016) ...................................................................................6

*Belize Soc. Dev. Limited v. Gov't of Belize*,
  5 F.Supp.3d 25 (D.D.C. 2013) ................................................................................13, 14

*C.U. Annuity Serv. Corp. v. Young*,
  281 A.D.2d 292, 722 N.Y.S.2d 236 (2001) .................................................................11

*Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*,
  244 F.Supp.3d 100 (D.D.C. 2017) .................................................................................7

*DRC, Inc. v. Rep. of Honduras*,
  999 F. Supp. 2d 1 (D.D.C. 2012) .................................................................................15

*Empresa Constructora Contex Limitada v. Iseki, Inc.*,
  106 F.Supp.2d 1020 (C.D.Cal. 2000) .........................................................................14

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
  403 F.3d 85 (2d Cir. 2005).............................................................................................15

*Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A.*,
  377 F.3d 1164 (11th Cir. 2004) ...............................................................................5, 6

*Gold Reserve Inc. v. Bolivarian Rep. of Venezuela*,
    146 F.Supp.3d 112 (D.D.C. 2015) ......................................................................13

*Hilton v. Guyot*,
    159 U.S. 113 (1895) .............................................................................................8

*Int'l Brotherhood of Teamsters, Local No. 264 v. Nason's Delivery, Inc.*,
    No. 11–CV–0186, 2011 WL 3862322 (W.D.N.Y. Aug. 31, 2011) ......................15

*Jugometal v. Samincorp, Inc.*,
    78 F.R.D. 504 (S.D.N.Y. 1978) .........................................................................10

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    364 F.3d 274 (5th Cir. 2004) ..............................................................................14

*Laker Airways, Ltd. v. Sabena, Belgian World Airlines*,
    731 F.2d 909 (D.C.Cir.1984) ...............................................................................8

*Mich. Comm. Servs., Inc. v. NLRB*,
    309 F.3d 348 (6th Cir.2002) .................................................................................9

*Milanovich v. Costa Crociere, S.p.A.*,
    954 F.2d 763 (D.C.Cir.1992) ..............................................................................13

*Oetjen v. Central Leather Co.*,
    246 U.S. 297 (1918) .............................................................................................8

*Productos Mercantiles E Industriates S.A. v. Faberge USA, Inc.*,
    23 F.3d 41 (2d Cir. 1994) ..............................................................................14, 15

*Singer Asset Fin. Co., L.L.C. v. Bachus*,
    294 A.D.2d 818, 741 N.Y.S.2d 618 (N.Y.App. Div. 2002) ..................................11

*Steel Corp. of Philippines v. Int'l Steel Services, Inc.*,
    354 Fed. Appx. 689 (3rd Cir. 2009) .....................................................................15

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    584 F.3d 396 (2d Cir.2009) .................................................................................13

*U.S. v. Kashamu*,
    656 F.3d 679 (7th Cir. 2011) ................................................................................8

*U.S. v. One Gulfstream G-V Jet Aircraft*,
    941 F.Supp.2d 1 (D.D.C. 2013) ............................................................................8

*Wichard v. Suggs*,
    95 F.Supp.3d 935 (E.D.Va. 2015) .......................................................................15

## I.      INTRODUCTION

Respondent Republic of Ghana ("Ghana") submits this *preliminary* response to the petition to confirm a foreign arbitral award brought by Petitioners Balkan Energy Limited ("Balkan UK") and Balkan Energy (Ghana) Limited ("Balkan Ghana") (together, "Petitioners").

## II.      DISCUSSION

### A.      Ghana's Motion to Dismiss Must be Finally Adjudicated First, Followed by Limited Discovery and Supplemental Briefing on the Merits.

As discussed in Ghana's reply in support of its motion to dismiss, Ghana's motion to dismiss must be adjudicated first, before Ghana can be required to respond fully on the merits. Nonetheless, out of an abundance of caution, Ghana submits this *preliminary* response on the merits, to make clear that it intends to defend the merits.  Prior to a ruling on the merits, Ghana requests limited discovery on the validity and effect of the purported assignment of the arbitral award and supplemental briefing thereon.  This request is addressed below in the last section.

### B.      The Subject Agreement (PPA) and its Arbitration Clause are Invalid.

Ghana submits the Declaration of Anthony Akoto Ampaw, a Ghanaian attorney.

Article 181 of the 1992 Constitution of Ghana requires that certain international agreements entered into with the Republic of Ghana be approved by the Parliament of Ghana. Article 181(1) provides: "An agreement entered into under… [this article] shall be laid before Parliament and shall not come into operation unless it is approved by a resolution of parliament." Article 181(5) states: "This article shall, with the necessary modifications by Parliament, apply to *an international business or economic transaction to which the Government is a party*…" (emphasis added).  Ampaw Decl. at ¶ 3 and Exhibit 1.

"Under Ghanaian law, arbitration clauses contained in international agreements subject to Article 181(5) are inseparable from the agreements themselves, and the validity of the arbitration

1

clause rises or falls with the agreements." Ampaw Decl. at ¶ 4.  In a prior case involving Ghana

and Balkan Ghana, *Attorney General v. Balkan Energy Ghana Ltd., et al.* [2012] 2 SCGLR 998

("Balkan Energy"), the Supreme Court of Ghana held:

> This is because applying the interpretation of article 181(5), it is clear that the international arbitration provision cannot, in and of itself, constitute an international business or economic transaction. However, *international commercial arbitration is not by itself an autonomous transaction* commercial in nature which pertains to or impacts on the wealth and resources of the country. *An international commercial arbitration draws its life from the transaction whose dispute-resolution it deals with. We therefore have difficulty conceiving of it as a transaction separate and independent from the transaction that has generated the dispute it is required to resolve.*

Ampaw Decl. at ¶ 4 and Exhibit 2 (*Balkan Energy* at p. 1037) (emphasis added).

Mr. Ampaw opines that "[i]n *Balkan Energy,* the Supreme Court of Ghana held that, as a

matter of Ghanaian law, arbitration clauses contained in international agreements subject to

Article 181 are not severable, but rather rise or fall with the international agreement."  Ampaw

Decl. at ¶ 5 (citing *Balkan Energy* at p. 1037).

The Supreme Court of Ghana decided *Balkan Energy* in 2012, after the 2010 Ghanaian

ADR Act was in effect (which otherwise contains a severability rule in § 3), and the Supreme

Court did not apply the ADR Act's severability doctrine to international agreements subject to

Article 181 of the 1992 Constitution of Ghana.  This is because the Constitution is "the supreme

law of Ghana and any other law found to be inconsistent with any provision of this Constitution

shall, to the extent of the inconsistency, be void."  Ampaw Decl. at ¶ 6 and Exhibit 3 (1992

Constitution, Article 1(2)).  As the Supreme Court of Ghana has explained:

> The 1992 Constitution is the supreme law of the land and article 1(1) makes it clear that "…*the powers of the government are to be exercised in the manner and within the limits laid down in this Constitution*…" As the supreme law of the land, the Constitution is applicable at all times and all acts and things, particularly those done for and on behalf of the Republic of Ghana, *must always be*

2

> *tested against its provisions.* In the course of judicial proceedings,
> it is incumbent upon every judge to keep its provisions in mind to
> assure compliance, not only by the parties before it, but also by
> itself.

Ampaw Decl. at ¶ 7 and Exhibit 4 (*Attorney General v. Faroe Atl. Co. Ltd.* [2005-2006] SCGLR 271 at p. 304 (emphasis added)).  "Accordingly, under Ghanaian law, an arbitration clause found in an international agreement governed by Article 181 is not severable from the international agreement and is invalid if the international agreement was not approved by Parliament." Ampaw Decl. at ¶ 8.  Mr. Ampaw opines that "the arbitration clause is not severable and is void *ab initio,* because the international agreement that contains that clause was never approved by Parliament as required by the 1992 Constitution of the Republic of Ghana."  *Id.* at ¶ 2.

The result is the same under international law.

> A defence of invalidity of the arbitration agreement is the lack of
> respect for the procedures provided for by the Constitution of the
> State so that the State may enter into an arbitration agreement… An
> example of this is the approval from Parliament, which is required,
> in some jurisdictions, for public enterprises to enter into an
> arbitration agreement.

Ampaw Decl. at ¶ 9 and Exhibit 5 (Rubino-Sammartano, M., *International Arbitration: Law and Practice* (3d Ed. 2014) at ¶ 7.12).

Mr. Ampaw explains that the "PPA is an international agreement subject to the requirements of Article 181(5).  This issue has already been finally adjudicated between the parties.  In *Balkan Energy,* the Supreme Court of Ghana held precisely that the PPA (the same agreement that is the basis for the instant arbitral award) is an international transaction subject to Article 181(5) of the Ghanaian Constitution.  *See Balkan Energy* at p. 40-41.  Accordingly, the issue whether the PPA is subject to Article 181(5) is settled, and this Court must give effect to the *res judicata* judgment of the Ghanaian Supreme Court."  Ampaw Decl. at ¶ 10.

Further, "the PPA was simply executed by the Ghanaian Minister for Energy without

Parliamentary approval.  Because the PPA was not approved by Parliament, it never went into

effect.  As a result, the arbitration clause contained in the PPA also never went into effect under

Ghanaian law.  Because there was no Parliamentary approval, the arbitration clause was an

unauthorized act and cannot be attributed to the Republic of Ghana.  This renders the resulting

arbitral award unenforceable against the Republic of  Ghana."  Ampaw Decl. at ¶ 11.

In the Interim Award, dated December 22, 2010, the Arbitral Tribunal concluded that

the PPA is governed by Ghanaian law, *id.* at 150 ("the PPA contains a choice of law provision

that expressly subjects the contract to Ghanaian law"), but that the arbitration clause was

severable and therefore subject to Dutch law, *id.* at 152 ("the Tribunal concludes that the law

applicable to the arbitration agreement in the PPA is the law of The Netherlands") and 167

("the Tribunal concludes that the arbitration agreement embodied in Article 22.2 of the PPA is

both valid and enforceable independently from the issue of the validity of the PPA").  Ampaw

Decl. at ¶ 12.  Mr. Ampaw opines that "these holdings are different from the question *whether*

*the government official who executed the PPA (and its arbitration clause) was duly authorized to*

*do so and bind the Republic of Ghana.*  That is an issue of Ghanaian law.  Because the PPA was

not authorized by Parliament, the PPA and its arbitration clause never went into effect. And, that

issue (that the arbitration clause was subject to Article 181(5)) had already been previously

decided by the Ghanaian Supreme Court, as discussed above."  *Id.* (emphasis in the original).

Thus, "the Ghanaian government official (the Minister of Energy) who executed the PPA

was not authorized under Ghanaian law to bind the Republic of Ghana, because the Ghanaian

Parliament never authorized the PPA or its arbitration clause. As a result, the PPA and its

arbitration clause are not binding on the Republic of Ghana, and cannot be considered to be acts

of the Republic of Ghana."  Ampaw Decl. at ¶ 14.  "Further, the determination whether the PPA

4

or its arbitration clause is valid under Article 181 is within the exclusive jurisdiction of the

Ghanaian Supreme Court, and therefore the subject arbitral award is void because that question

is not arbitrable under Ghanaian law.  Under Ghana's 1992 Constitution, matters of

constitutional interpretation fall within the exclusive jurisdiction of the Supreme Court of Ghana.

Article130(1) (a) of the 1992 Constitution, states: 'the Supreme Court shall have *exclusive

original jurisdiction* in all matters relating to the enforcement or interpretation of this

Constitution."  *Id.* at ¶¶ 15-16 and Exhibit 6 (Article 130(1)(a)) (emphasis added).

**C.      Confirmation of the Petition Must Be Denied Pursuant to Article V(1)(a) of the New
York Convention.**

Confirmation of the petition must be denied pursuant to Article V(1)(a), which states:

> *Recognition and enforcement of the award may be refused*, at the
> request of the party against whom it is invoked, only if that party
> furnishes to the competent authority where the recognition and
> enforcement is sought, proof that: (a) The parties to the
> agreement referred to in article II were, under the law applicable to them,
> under some incapacity, or *the said agreement is not valid under
> the law to which the parties have subjected it* or, failing any
> indication thereon, under the law of the country where the award
> was made;

(Emphasis added).  The agreement referred to in article II is the agreement to arbitrate.

Thus, Article V(1)(a) expressly requires that the Court make *its own determination* about

whether the arbitration agreement is valid.  *Id.*  The Court cannot simply defer to the arbitrators'

findings, because that would render Article V(1)(a) superfluous.  The decision in *Four Seasons

Hotels and Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164 (11th Cir. 2004), is instructive:

> We agree with Consorcio that *it is not precluded from challenging
> the panel's decision* merely because it participated in the arbitral
> proceeding.  If we adopted the district court's position, a party
> facing arbitration would be in an untenable position.  On the one
> hand, it could refuse to participate in the arbitral proceeding
> altogether to preserve its ability to challenge any adverse ruling in
> court; by doing so, however, the party would effectively forfeit any
> ability to present the merits of its case to the arbitrators.  On the

> other hand, if the party were to participate in the proceeding, it would lose any ability to challenge the arbitrator's ruling. *Nothing in the Convention suggests that parties must make such a choice*, and we can find no case that supports this preclusive rule.
>
> For this reason, we remand this case to the district court so that it may consider for the first time the merits of Consorcio's argument that the Venezuelan court's ruling favors non-confirmation of the award.  We note that, even if the court finds that Article V(1)(a) applies, *the court must exercise its discretion to determine whether confirmation nevertheless is appropriate*.

*Consorcio*, 377 F.3d at 1171-1172 (emphasis added).

Applying Article V(1)(a) to this case, "the law to which the parties have subjected*"* the arbitration clause is Ghanaian law, because the PPA is governed by Ghanaian law (*see* PPA at ¶ 23), and the arbitration clause is inseparable from the PPA.  As discussed above in Part B, the arbitration clause (that is, the arbitration agreement itself) is invalid under Ghanaian law.

Petitioners cite decisions involving Belize, but they support Ghana's contentions.  *BCB Holdings Ltd. v. Gov't of Belize*, 232 F.Supp.3d 28 (D.D.C. 2017), held: "the GOB *has not provided any proof* to the Court that the provision in which the parties agreed to arbitrate is invalid *under Belizean law*, so the GOB's challenge under Article V(1)(a) fails." *Id.* at 48 (emphasis added).  And, *Belize Bank Ltd. v. Gov't of Belize*, 191 F.Supp.3d 26 (D.D.C. 2016), held: "if there is a challenge under Article V(1)(a) to anything, it must be to the agreement to arbitrate itself, not the agreement as a whole.  Here, Belize *has not offered any evidence* that the arbitration agreement itself is invalid *under the law of Belize*.  Therefore, Article V(1)(a) does not provide a ground to deny the Petition." *Id.* at 39 (emphasis added).  In contrast, Ghana has provided an expert opinion that the arbitration clause in the PPA is invalid under Ghanaian law.

Finally, it matters not that the arbitral tribunal has held that the arbitration clause is valid under Dutch law, the law of the arbitral seat.  Under Article V(1)(a), the arbitration agreement

may be held to be invalid *either* "under the law to which the parties have subjected it *or*, failing any indication thereon, under the law of the country where the award was made." (Emphasis added). Because the arbitration agreement is invalid under Ghanaian law, confirmation must be denied under Article V(1)(a).

**D.      Confirmation of the Petition Must Be Denied Pursuant to Article V(1)(c) of the New York Convention.**

Confirmation of the petition must be denied pursuant to Article V(1)(c), which provides:

> Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that: … (c) The award deals with a difference *not contemplated by or not falling within the terms of the submission to arbitration*, or it contains decisions on matters *beyond the scope of the submission to arbitration* …;

(Emphasis added).

In order to apply Article V(1)(c), the court must determine whether the parties agreed to submit the question of arbitrability to the arbitral tribunal. If they did not, the court need not provide any deference to the arbitrators' findings. In *Crystallex Int'l Corp. v. Bolivarian Rep. of Venezuela*, 244 F.Supp.3d 100 (D.D.C. 2017), this Court held that "when the parties explicitly agree that the tribunal should decide the scope of its own inquiry, then courts should review that determination deferentially." *Id.* at 111-112. "Determining that the parties submitted questions of arbitrability to the tribunal requires clear and unmistakable evidence." *Id.* (citations omitted).

There is no evidence that the parties "clearly and unmistakably" agreed to submit the question of the validity of the arbitration clause to the arbitral tribunal. Rather, the determination whether the PPA and its arbitration clause are valid under Article 181 is within the *exclusive jurisdiction* of the Supreme Court of Ghana. Thus, the arbitral panel lacked jurisdiction to make that determination, and consequently lacked jurisdiction over the dispute. Confirmation of the

arbitral award must be denied, because "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration."  Article V(1)(c).

**E.   Confirmation of the Petition Must Be Denied Pursuant to Article V(2)(b) of the New York Convention.**

Confirmation of the petition must be denied pursuant to Article V(2)(b), which provides:

> Recognition and enforcement of the award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
>
> (b) The recognition or enforcement of the award *would be contrary to the public policy of that country*.

(Emphasis added).

The application of Article V(2)(b) is governed by U.S. public policy.  It is a basic U.S. policy that U.S. courts afford international comity to decisions of foreign courts.  "International comity is a doctrine of deference based on respect for the decisions of foreign sovereigns."  *U.S. v. One Gulfstream G-V Jet Aircraft*, 941 F.Supp.2d 1, 8 (D.D.C. 2013) (citing *U.S. v. Kashamu,* 656 F.3d 679, 683 (7th Cir. 2011); *Hilton v. Guyot,* 159 U.S. 113, 164 (1895)).  The doctrine reflects important public policies.  *See Oetjen v. Central Leather Co.,* 246 U.S. 297, 304 (1918) ("To permit the validity of the acts of one sovereign state to be reexamined and perhaps condemned by the courts of another would very certainly imperil the amicable relations between governments and vex the peace of nations."); *Laker Airways, Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir.1984) ("the decisions of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations."). The doctrine is a "golden rule among nations—that each must give the respect to

the laws, policies and interests of others that it would have others give to its own in the same or similar circumstances." *Mich. Comm. Servs., Inc. v. NLRB,* 309 F.3d 348, 356 (6th Cir.2002).

As Mr. Ampaw explained above, the Supreme Court of Ghana has held in *Balkan Energy* that the PPA is invalid because it violates Article 181(5) of the Ghanaian Constitution and, as a result the arbitration clause in the PPA also is invalid. Under the Ghanaian Constitution, these are matters within the exclusive jurisdiction of the Supreme Court of Ghana. Here, the United States has no interest in this dispute. Accordingly, the doctrine of international comity requires that this Court dismiss this action in deference to the Supreme Court of Ghana, and the vehicle to do so is Article V(2)(b) of the New York Convention.

**F.      Confirmation as to Balkan UK Must Be Denied Because the Assignment is Invalid.**

Petitioners incorrectly argue that the award was validly assigned to Balkan UK, and the validity of the assignment is a question of English law. The assignment is governed by Ghanaian law and is invalid law. Balkan UK is not entitled to enforce the award based on the assignment.

First, the assignment is invalid because the PPA required the consent of Ghana to assignments, and the consent of Ghana was not obtained. The PPA at ¶ 19.1 provides:

> Assignment.  Neither Party may assign nor transfer all or any part of its rights, benefits or obligations hereunder without the written consent of the other Party.

This is a matter of Ghanaian law. The PPA is governed by Ghanaian law. *See* PPA at ¶ 23. As such, contractual rights arising from the PPA are governed by Ghanaian law. Because the arbitral award is merely a contractual right to payment, *see Florasynth,* 750 F.2d at 176 ("An unconfirmed award is a contract right that may be used as the basis for a cause of action."), and the contract which gives rise to the award is governed by Ghanaian law, the assignability of the award also is governed by Ghanaian law, the law that the parties expressly selected to govern their contractual relationship. As a purported assignee, Balkan UK would step into the shoes of

Balkan Ghana, and therefore Balkan UK's rights would be governed also by Ghanaian law.  *See Jugometal v. Samincorp, Inc.*, 78 F.R.D. 504, 507 (S.D.N.Y. 1978) ("An assignee has the same standing to enforce an arbitration award in this Court as its assignor would have ….").

In this regard, Mr. Ampaw opines that "Balkan Energy (Ghana) Limited's attempt to assign the subject arbitral award to Balkan Energy Limited, a British entity, is null and void because such an assignment also was not approved by Parliament under Article 181(5).   As discussed above, the PPA is expressly governed by Ghanaian law.  *See* PPA (ECF No. 1-4) at ¶ 23.  The Arbitral Tribunal also held that the PPA was governed by Ghanaian law.  *See* Interim Award at ¶ 150. As such, there is no doubt that the relationship between the parties Balkan Energy (Ghana) Limited and the Republic of Ghana, the two signatories to the PPA, is governed by Ghanaian law."  Ampaw Decl. at ¶ 17.  Further, Mr. Ampaw explains:

> The subject arbitral award is simply a contractual right to payment against the Republic of Ghana.  The subject assignment is an international agreement because it seeks to assign the contractual rights of payment against the Republic of Ghana to a foreign company, Balkan Energy Limited.  The result would be that the Republic of Ghana would have a contractual debt to Balkan Energy Limited. Because it affects the contractual obligations of the Republic of Ghana under the PPA, any assignment would be governed by Ghanaian law. This is the correct conclusion under Ghanaian law, because otherwise a party could simply assign away to foreign entities contractual rights against the government and avoid the requirements of Article 181(5). As such, the subject assignment would have had to be approved by Ghanaian Parliament pursuant to Article 181(5). Here, there was no such approval.  As a result, it is my legal opinion that the assignment is void under Ghanaian law as between the Balkan companies and the Republic of Ghana. The Balkan companies can choose to apply foreign law between them with respect to the fruits of the arbitral award, but they cannot impose foreign law on the Republic of Ghana because Balkan Energy (Ghana) Limited contractually agreed that its contractual relationship with the Republic of Ghana would be governed by Ghanaian law.

Ampaw Decl. at ¶ 18.

10

In addition, ¶ 19.1 ("Assignment") of the PPA provides: "Neither Party may assign nor transfer all or any part of its rights, benefits or obligations hereunder without the written consent of the other Party."  Thus, Mr. Ampaw opines that the "assignment is also void under Ghanaian law because the Republic of Ghana did not consent to the assignment."  Ampaw Decl. at ¶ 19.

Second, even if United States law governed this determination, the analysis would be the same.  The seminal case of *Allhusen v. Caristo Construction Corp.,* 303 N.Y. 446 (N.Y. 1952), is on point.  A party to a construction contract attempted to assign the right to payment under the contract.  However, the contract stated that "assignment by the second party ... without the written consent of the first party shall be void."  The court held: "In the light of the foregoing, we think it is reasonably clear that, while the courts have striven to uphold freedom of assignability, they have not failed to recognize the concept of freedom to contract.  In large measure they agree that, where appropriate language is used, assignments of money due under contracts may be prohibited."  *Id.*  at 451.  "We are therefore compelled to conclude that this prohibitory clause is a valid and effective restriction of the right to assign."  *Id.*  at 452.  Here too, because the consent of Ghana was required under ¶ 19.1 of the PPA but was never obtained, the assignment is void.

Petitioners incorrectly argue that an assignment prohibition only gives rise to a claim for breach of the contract.  "Whether a non-assignment clause renders a subsequent assignment void or the breach of a personal covenant not to assign depends upon the expressed intent of the parties, namely whether the language is sufficiently express to bar the assignment."  *C.U. Annuity Serv. Corp. v. Young*, 281 A.D.2d 292, 722 N.Y.S.2d 236, 236 (2001).  PPA at ¶ 19.1 expressly prohibits assignments "without the written consent of the other Party."  It unambiguously states the intent of the parties that there shall be no assignments without consent, which renders unconsented assignments void.  *See e.g., Singer Asset Fin. Co., L.L.C. v. Bachus,*

294 A.D.2d 818, 741 N.Y.S.2d 618 (N.Y.App. Div. 2002) (contract stating that its proceeds "are not subject in any manner to ... assignment ..." was sufficient to render assignment void).

Petitioners incorrectly argue that ¶ 19.1 of the PPA "refers only to rights or benefits thereunder – i.e., contractual rights under the Power Purchase Agreement itself. The provision does not purport to cover rights in an arbitral award in a dispute arising out of a breach of an agreement." As noted, the arbitral award is a "contractual right" to payment from Ghana.

Petitioners cite the *Restatement (2nd) Contracts* § 322(2)(a) (1981), for the proposition that an anti-assignment clause is inapplicable to an "assignment of a right to damages for breach of the whole contract" as opposed to executory contract rights. However, the award is executory, because it is a contractual right to payment. The PPA's assignment prohibition applies.

And third, the Petitioners argue that the assignment is governed by English law, and have submitted the declaration of a purported English law expert concluding that the assignment was valid under English law. Even if the assignment is valid under English law, it violates the prohibition against assignments in the PPA; thus, it is unenforceable. Petitioners' expert claims that the award creates "new rights", but those are *contractual* rights relative to the PPA (because the award involves rights derived from the PPA), which renders them subject to Ghanaian law under the PPA's choice of law clause. Moreover, the PPA at ¶ 30 provides that "[t]his Agreement is intended to be solely for the benefit of [the signatories] and their successors and *permitted assigns* and is not intended to and shall not confer *any rights or benefits* on any third party not a signatory hereto." (Emphasis added). An assignment, without Ghana's consent, thus cannot confer any rights, to an assignee, regardless of whether "new rights" are created.

Moreover, the issue of whether the award may be assigned is governed by the choice of law clause in the PPA, because it is the PPA that must be examined to determine whether the

assignment is permitted under ¶ 19.1, and the PPA contains a Ghanaian law selection clause. *See Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 411 n. 11 (2d Cir.2009) (in New York Convention action, applied New York law pursuant to choice-of-law clause in agreement); *Asia N. Am. Eastbound Rate Agreement v. BJI Indus., Inc.,* 923 F.Supp. 4, 4 (D.D.C.1996) (applied Hong Kong law in arbitration enforcement action since "'[u]nder American law, contractual choice-of-law provisions are usually honored.'" (quoting *Milanovich v. Costa Crociere, S.p.A.,* 954 F.2d 763, 767 (D.C.Cir.1992))).  English law, the law selected by the assignment, comes into play only *after* it is determined that the assignment is permissible in the first place under the PPA and its governing Ghanaian law.  And once it comes into play, English law governs only the relation between assignor Balkan Ghana and assignee Balkan UK.

Finally, the English law is irrelevant, because there was no legal nexus between English law and the arbitration.  The Award on the Merits states that, although London was selected as "hearing venue," that "should not affect the Parties' agreement that The Hague, the Netherlands be the place of arbitration."  *Id.* at ¶ 36 and ¶ 37 ("The Hague is the place of the arbitration (seat) for the present proceedings.").  This was so because the arbitration referred to the Permanent Court of Arbitration at The Hague.  *See id.,* at title; PPA at ¶ 22 ("the matter shall be referred to binding arbitration at the Permanent Court of Arbitration, … The Hague, The Netherlands").

Balkan UK's cites *Belize Soc. Dev. Limited v. Gov't of Belize*, 5 F.Supp.3d 25 (D.D.C. 2013), but it supports Ghana.  The court applied English law to determine the validity of the assignment, because the arbitral seat was the London Court of International Arbitration in London.  *Id.* at 30-31.  In contrast, the arbitral seat here was not London, and thus English law does not govern the arbitral award.  *Gold Reserve Inc. v. Bolivarian Rep. of Venezuela*, 146 F.Supp.3d 112, 134 (D.D.C. 2015) ("Because the parties jointly selected that French city as the

seat of the arbitration, the arbitral proceedings are governed by French arbitration law"). *Belize Soc. Dev.* is also distinguishable because it held that "GOB does not dispute that under the New York Convention, an assignee can enforce an arbitration award in favor of the assignor." 5 F.Supp.3d at 35, n. 12. In contrast, Balkan UK is not seeking to enforce the award in favor of Balkan Ghana. Balkan Ghana has relinquished all rights in the award.

**G.      Confirmation as to Balkan Ghana Must Be Denied based on its Judicial Admissions.**

Confirmation must be denied as to Balkan Ghana, because it has judicially admitted that it has assigned away any rights in the arbitral award, as discussed in the motion to dismiss.

**H.      In the Alternative, Limited Discovery is Required to Determine the Validity and Effect of the Assignment, Followed by Supplemental Briefing.**

"The district court is empowered to act in arbitration confirmation proceedings with respect to discovery." *Empresa Constructora Contex Limitada v. Iseki, Inc.*, 106 F.Supp.2d 1020, 1024 (C.D.Cal. 2000) (citation omitted). As the Fifth Circuit has noted,

> In judging discovery requests i*n this context of an arbitration award confirmation proceeding*, the court *must weigh the asserted need for hitherto undisclosed information* and assess the impact of granting such discovery on the arbitral process. The inquiry is an *entirely practical* one, and is necessarily *keyed to the specific issues raised by the party challenging the award* and the degree to which those issues implicated factual questions that cannot be reliably resolved without some further disclosure.

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004) (citations omitted) (emphasis added).

This Court agrees that courts may permit discovery in a post-arbitration proceeding when such it is "relevant and necessary to the determination of an issue raised by such an application." *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.,* 961 F.Supp.2d 245, 261 (D.D.C. 2013). Further, in a decision cited by the Petitioners, *Productos Mercantiles E Industriles S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 47 (2d Cir. 1994), the Court of Appeals remanded a confirmation action "for a

determination of whether Unilever is a successor to Faberge's interest in the 1971 agreement." *Id.* at 47; *accord, Wichard v. Suggs*, 95 F.Supp.3d 935, 948 (E.D.Va. 2015) (same, citing *AMRA, supra*); *Int'l Brotherhood of Teamsters, Local No. 264 v. Nason's Delivery, Inc.,* No. 11–CV–0186, 2011 WL 3862322, at *7 (W.D.N.Y. Aug. 31, 2011) (reserving judgment on petition to confirm until defendants could conduct discovery on certain issues, including alter ego liability).

Petitioners have handed the Court a threshold issue that begs for a resolution – whether the assignment is valid.  The PPA prohibits assignments without the consent of Ghana, and Ghana did not consent.  Article 181(5) of the Constitution prohibits assignment of contractual rights without Parliamentary approval, and there was no approval.  Yet, the Petitioners take inconsistent positions by seeking to confirm the arbitral award on behalf of both the assignor and assignee.  If this Court is not willing to reject the assignment based on the record before it, limited discovery is required of Petitioners on the validity and effect of the assignment of the arbitral award from Balkan Ghana to Balkan UK.  Ghana has no knowledge of the assignment, because it was not a party to it.  Yet, the validity and effect of the assignment are critical on the merits.  Therefore, Ghana requests leave to conduct limited discovery to obtain documents from and take depositions of both Petitioners on the issue of the validity and effect of the assignment.

After said limited discovery is concluded, Ghana requests supplemental briefing on its opposition on the merits.  Supplemental briefing is permitted in confirmation actions.  *See e.g., DRC, Inc. v. Rep. of Honduras*, 999 F. Supp. 2d 1, 2 (D.D.C. 2012) (ordered party briefing and supplemental briefing on merits of the petition); *Steel Corp. of Philippines v. Int'l Steel Services, Inc.*, 354 Fed. Appx. 689, 691 (3rd Cir. 2009) (in New York Convention confirmation action, "after a discovery phase, the parties filed cross motions for summary judgment"); *Encyclopaedia*

*Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 89 (2d Cir. 2005) (plaintiff

moved for summary judgment to confirm arbitral award pursuant to New York Convention).

### III.    CONCLUSION

For the foregoing reasons, Ghana requests that the Court deny the petition.

Given the complexity of this action, Ghana requests a hearing.

Dated:  October 13, 2017                    Respectfully submitted,

                                            /s/ Creighton R. Magid
                                            Creighton R. Magid (D.C. Bar No. 476961)
                                            DORSEY & WHITNEY LLP
                                            1801 K Street, N.W., Suite 750
                                            Washington, D.C.  20006
                                            Telephone:  202-442-3555
                                            Fax:  202-442-3199
                                            Email:  magid.chip@dorsey.com

                                            Juan C. Basombrio (D.C. Bar No. CA0001)
                                            DORSEY & WHITNEY LLP
                                            600 Anton Boulevard, Suite 2000
                                            Costa Mesa, CA  92626
                                            Telephone:  714-800-1405
                                            Fax:  714-800-1499
                                            Email:  basombrio.juan@dorsey.com

                                            *Counsel for Respondent Republic of Ghana*

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this October 13, 2017, I electronically filed the foregoing

RESPONDENT'S PRELIMINARY RESPONSE TO PETITION with the Clerk of the Court for

the United States District Court for the District of Columbia using the CM/ECF system, which

automatically served opposing counsel in this case.

<div style="margin-left:40%">

/s/ Creighton R. Magid
Creighton R. Magid

</div>